UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UDALIUS MCCLOUD,

      Plaintiff,

v.                                         Case No. 17-cv-807-pp

FEDERAL BUREAU OF INVESTIGATION, *et al.*,

      Defendants.

**ORDER GRANTING MOTIONS TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NOS. 2, 9) AND DISMISSING CASE**

On June 7, 2017, the plaintiff, who is representing himself, filed a complaint, alleging that the defendants have wire-tapped him and turned his life upside down. Dkt. No. 1. Along with the complaint, the plaintiff filed a motion asking the court to allow him to proceed with his case without paying the filing fee. Dkt. No. 2. Two weeks later, the plaintiff filed an amended complaint; he says that the amended complaint is just explaining more about the first one. Dkt. No. 4. The next day, the plaintiff filed a supplement to his complaint, dkt. no. 5; he filed a second supplement on July 7, 2017, dkt. no. 6. Three weeks later, the plaintiff sent a letter to the court, dkt. no. 7, and on August 14, 2017, he filed a proposed second amendment complaint, dkt. no. 8, together with a second motion for leave to proceed without prepayment of the filing fee, dkt. no. 9. The plaintiff most recently filed a supplement to his amended complaint. Dkt. No. 10. In this order, the court reviews the plaintiff's

1

motion to proceed without prepaying the filing fee, and screens his various pleadings. Because the plaintiff has not stated a claim on which the court can grant him the relief he seeks, the court will dismiss the case.

I.  **The Plaintiff's Motions to Proceed Without Prepaying the Filing Fee (Dkt. Nos. 2, 9)**

A court may allow someone to proceed without prepaying the $400 civil case filing fee if the case meets two conditions: (1) the person shows that he can't pay the filing fee; and (2) the case is not frivolous nor malicious, does not fail to state a claim on which the court can grant relief, and does not seek monetary relief against a defendant who is immune from that relief. 28 U.S.C. §§1915(a) and (e)(2).

A.  Plaintiff's Ability to Pay the Filing Fee

On his first application to proceed without prepaying the filing fee, the plaintiff checked both the "yes" and "no" boxes for "are you employed." Dkt. No. 2 at 1. He stated that he was not married, and had a sixteen-year-old daughter, three fourteen-year-old daughters, and a thirteen-year-old son; he said that he provided $140 to each of them each month for support—a total of $700 a month. Id. He claimed no monthly wages or salary, and under "source of income," he stated, "family (being harassed TI)" and that the amount he received from family is "open." Id. at 2. He said that his family was helping him with rent, that he was paying $280 a month in alimony or court-ordered child support, and that his household expenses were "open." Id. He reported no other assets or income of any kind. Id. at 2-4.

In the plaintiff's second request to proceed without prepaying the filing fee, dkt. no. 9, the plaintiff made some minor changes to the above information. He changed the amount of support he provides each month to each of his children from $140 to $148. Id. at 1. He stated that the amount of his wages/salary was "open," and that he was "working on homes." Id. at 2. He said that the amount of his rent was "open," and that he paid $148 in alimony or court-ordered child support. Id. At the end of this second application, the plaintiff says, "I lost everything because of this people please don't kill my kids." Id. at 4.

This information demonstrates that the plaintiff does not have the ability to pay the $400 civil case filing fee.

B.  Screening

Although the plaintiff has demonstrated that he does not have the money to pay the filing fee, the court must dismiss a complaint if a plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). For this reason, district courts "screen" complaints filed by self-represented plaintiffs to determine whether the complaint must be dismissed under these standards.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson *ex rel.* Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may dismiss a claim as frivolous where it is based on

3

an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim for relief under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead specific facts, and his statement needs only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted). If there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

1. *Plaintiff's Filings*

Federal Rule of Civil Procedure 8(a)(2) states that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The plaintiff has brought his lawsuit in a series of seven documents, filed over about two and a half months. The court must go through all of them to try to determine what claims the plaintiff is bringing.

    a. The Original Complaint (Dkt. No. 1)

The plaintiff's June 7, 2017 complaint names the U.S. Marshals, "5th District," "HDTA," "Comm. Care" and "Department of Aging" as defendants. Dkt. No. 1 at 2. The court knows who the U.S. Marshals are. It does not know who the plaintiff means by "5th district"—he may be referring to the District 5 department of the Milwaukee Police Department. The court does not know what "HDTA" is, but the plaintiff might be referring to the Milwaukee High-Intensity Drug Trafficking Area program, referred to as "HIDTA," and often pronounced "HIGH-duh." The plaintiff does not explain his reference to "Comm. Care," although the court is aware that Milwaukee County has a program called "Community Care," which provides the "PACE—Program of All-Inclusive Care for the Elderly—program,"[1] the Family Care Partnership Program "for frail

---

[1] "The Program of All-Inclusive Care for the Elderly, also known as PACE, offers a benefit package that combines medical care, long-term care and prescription drugs. PACE helps frail and disabled individuals age 55 and older live as independently as possible for as long as possible within the community." www.communitycareinc.org/home/what-we-do/pace, last visited July 29, 2018.

5

elders and adults with physical, intellectual or developmental disabilities,"[2] and Family Care Medicaid. Finally, there is a Milwaukee County Department on Aging. See https://county.milwaukee.gov/EN/Department-on-Aging.

The original complaint alleges that these defendants "made [the plaintiff] a targeted individual." Dkt. No. 1 at 2. He says that his friend James Earl Wilkins, Jr. offered him a program "that supposed to help keep you out the Feds." Id. He says his friend needed help with a situation—"trying to get a time cut"—but that the plaintiff did not "sign off to the program." Id. He says that he did not want to sign off to the program "and take the bait." Id. The plaintiff alleges that now, he is "being watched by them gang stalked and have some type of wire tap on my brain & my phone that burning my head and body yelling in my head Blowing air up my butt[.]" Id. at 2. The plaintiff says that this has been going on since October 2015 through June 2017. Id.

The original complaint also alleges that "a phone got broke that they tried to run [the plaintiff] around with they told me to throw the phone I did all hell broke lose [sic] life hasn't been the same since." Id. at 3. The plaintiff says that "they" say that "everybody going crazy." Id. He says that before "they" came around, his life was going well, but that now he can't sleep, his body is in pain, and he feels like he's going to die. Id. For relief, the plaintiff asks the court to "[t]ake this wire tap off my head & body and maybe some time of relief money because my whole life been turned upside down." Id.

---

[2] www.communitycareinc.org/home/what-we-do/partnership, last visited July 29, 2018.

6

b.      June 21, 2017 Amended Complaint (Dkt. No. 4)

Fourteen days later, on June 21, 2017, the plaintiff filed an amended complaint. Dkt. No. 4. In the amended complaint, the plaintiff did not name HDTA as a defendant, but included the other defendants he'd sued in the original complaint. Id. at 1. The amended complaint mentions the "F.B.I. confidential informed program." Id. at 2. He again mentions James Wilkin, and also mentions someone named Neasha Shefton; he concedes that these names may be spelled wrong. Id. He indicates that these people "put [him] in a situation that [he] cannot handle;" he says that they "got a time cut for framing [him] with there [sic] cases." Id. He reiterates that James Wilkins asked him for help with a case, saying that Wilkins "told him to join a program that help keep you out the feds he never told me that I had to catch a case to be apart [sic] of the program." Id. at 2-3. The plaintiff says that Wilkins told him that the program was supposed to help the plaintiff; "[Wilkins] said they where [sic] going to gave me 7,500.00 dollars to go out of town to set people up we had to go undercover." Id. at 3. The plaintiff told Wilkins that this didn't sound real to the plaintiff, so Wilkins told the plaintiff to come back around 3:00 a.m. to get the money. Id. The plaintiff did go back, and Wilkins had a box with checks that didn't have the plaintiff's name on them. The plaintiff alleges that he never touched the checks, but that "now they are calling it a mob telling [him] to hurt somebody kid to be apart [sic] of this mob." Id. The plaintiff insists that he did not want to be a part of any mob. Id.

The plaintiff says that Wilkins told him that the plaintiff's family didn't like the plaintiff, and that the plaintiff found out that "they under a investigation with comm care." Id. (It is not clear whether it was the plaintiff's family who was under investigation, or the defendants.) The plaintiff says that his aunt, Carol Oglesby, told him that "it's a mob the Milwaukee police department circling around my grandmothers house playing on the t.v." Id. The plaintiff alleges that a caregiver named Jackie told him to throw his phone "because the tv was telling her that was the best [option/opinion] but it was not," and that this gave "them" the right to put a head monitor on his head and put him on the "T" list and watch list and black list, "to take [him] out of the world with a health machine and yelling in head." Id. The plaintiff says that the torture is unbearable: "gas poison, heartache, strokes, etc. air up butt." Id.

In the June 21, 2017 amended complaint, the plaintiff asks for the following relief: "(open) need a lawyer to deside [sic]. Could you please take me off the watch list, 'T' list, Blacklist, etc please leave me alone." Id. at 3-4.

Attached to the June 21, 2017 amended complaint are a variety of documents, including an e-mail conversation with a "Malyssa Jarret," id. at 6-13; a "statement of emergency detention by law enforcement officer" dated November 2, 2015, id. at 15-16; Court Record Events pages for Milwaukee County case number 2015CV009564, Carol Oglesby v. Udalius McCloud, id. at 17-18; several pages of medical records, id. at 21-22; 32-36; Court Record Events for Milwaukee County case number 2016CR2810, State of Wis. v. James Earl Wilkins Jr.. id. at 23-25); a one-page article from "reason.com," id.

8

at 26; a citizen complaint form filed with the Milwaukee Fire and Police Commission, id. at 27-31; a letter from the ACLU-Wisconsin declining legal representation, id. at 37; four citizen complaint forms filed with the Milwaukee Police Department, id. at 38-45; an article from the Rolling Stone magazine, id. at 46-51; and nine pages of comments from an article on "fbiharassment.blogspot.com," id. at 52-60.

      c.      Supplements (Dkt. Nos. 5, 6 and 7)

On June 22, 2017, July 7, 2017 and July 27, 2017, the plaintiff filed two supplements and a letter regarding his case. Dkt. Nos. 5, 6 and 7. The first supplement describes the plaintiff's suffering—his inability to sleep, buzzing in his head, burning of his private parts (while telling him that it was a sexually transmitted disease). Dkt. No. 5 at 1. He talks about fake raids on CI "out in 2-3 business days," and says that the "program" is killing him. He expresses great worry about his family's safety, sparked by promises that setting people up or giving your time to a friend will get you rewards. Id. The plaintiff says he does not want to know anything about the program (which he says is the U.S. Marshal's program), and that "they" are paying people to set him up. Id. He just wants the wiretap off of his head to stop the 24/7 yelling in his head and the brain damage he is suffering for trying to stay out of trouble. Id. at 2. He says he can't keep a job, because "they" follow him all day, have had him fired more than once, and now are in his child support courtroom. Id.

    In the second supplement, the plaintiff states,

> Finish this off by saying "please stop" harassing me with a secret head unit I can't stop you people from talking in my head pulling

> and squeezing my head burning feeling all over my body and my name going to the ground just because I didn't want to sign off to your program as a spy for special Agent Kevin Blackmon & SA McCarthy[.]

Dkt. no. 6 at 1. The plaintiff says that he knows it will take time to get into court, but says that with them being "buzzy" and "shaking [his] brain," he doesn't think he will be able to make it to court "with a full brain or even alive." Id. He says that his whole family is "test dummys" who got tricked into signing off on programs that the plaintiff thought were going to help them. Id. He ends by saying, "Please help." Id.

The plaintiff then attaches the criminal complaint from Milwaukee County Case Number 16CF2810, State of Wis. v. James Earl Wilkins, Jr. That criminal complaint charges James Wilkins with several counts of manufacturing/delivering cocaine and details how Milwaukee Police officers, as well as certain special agents, met with a confidential source to arrange controlled buys from Mr. Wilkins. Id. at 3.

The plaintiff filed his letter about seven weeks after he filed the original complaint. Dkt. No. 7. The letter says that the confidential informant program is run by the F.B.I., the Marshal's Service and the Milwaukee Police Department. Id. at 1. He says that he has been to about five lawyers in Wisconsin; one of them told him that no lawyer in Wisconsin would take his case, that it was "a lost cause just give up on life and get on Social Security program." Id. The plaintiff says that he is only thirty-seven years old, and never had a mental health problem before this situation. Id. He says he'd just been going through some tough times, and was trying to get back on his feet, but

that "they" pushed all of his lady friends away, so he's had no companionship. Id. Because of this, he went to "his" gas station, and he alleges that "the officers on this case put child porn," so he asked the gas station owner if the owner knew that he was selling child porn. Id. The plaintiff says he did buy "one that didn't say teen"—the court assumes he means a magazine—but that it turned out to be the same thing. Id. at 2. The plaintiff says that he was "giving it to the court system to look it over," but that he was too scared to bring it out, so he poured gas and made a fire. Id. He says that despite this, he saved one for the court. He does not understand why "everybody being told they have a mental illness when fighting or in a legal problem." Id. The plaintiff says that he doesn't want to have a heart attack, or to die, from a broken phone. He says that his friend got caught with porn and asked for help; which brought the plaintiff back to his question of "why do ten if I can gave [sic] it to a friend sad." Id.

The plaintiff attached to this letter four pages of newsletters and articles about things such as a bill to stop racial profiling that was designated a mental health awareness bill, discrimination against LGBT persons, side-effects caused by electroshock therapy and women in Kenya who use martial arts to protect themselves. Dkt. No. 7-1.

     d.  Proposed Second Amended Complaint (Dkt. No. 8)

On August 14, 2017, the plaintiff filed a proposed second amended complaint, naming "F.B.I., US Marshalls [sic], HIDTA, comm care, Department of aging" as defendants. Dkt. No. 8. The second amended complaint begins by

11

describing again all of the physical problems that he and his family have been having. Dkt. No. 8 at 2. He says that "everybody forced in to the Confidential Informant program which is ran by the F.B.I." Id. at 2.

The plaintiff alleges that "they" recorded his voice, narrating his thoughts. Id. at 3. He says that a girl he was talking to, Nesha Sheltion, and her brother "must of got in some trouble so they seting [sic] people up saying voice analyst on," meaning that "they" were recording his voice and narrating his thoughts "to a cheat." Id. Later, he repeats the allegations that

> a old friend name James Wilkins offered [him] a program to help him out the bust he's window and found or take a phone that he said he got caught with a phone with child porn on it and he needed help almost in tears that he need 5 people to sign off to the program which he said it was supposed to help you stay out the feds I didn't have no case at all they told me I will be to powerful to be in the program with out a case so they as we speak a trying there best to frame or give me he's time and there was a investgasion [sic] at my grandmothers house with comm care & Department of aging where some type of fal[s]e play with Carol Oglesby and all the care takers which my grandmother has 24 hour care. I don't work for comm care so why am I being investigated.

Id. at 3.

This complaint discusses a situation in which someone convinced the plaintiff to call the police on his cousin, with his grandmother telling him to get the money out of the house. Id. at 4. The plaintiff says that he fell for the plot, and then got in big trouble and couldn't go back into the home (although his cousin did). Id. The plaintiff says that "they" are trying to trade life insurance policies that his grandmother set up for him in exchange "For a time cut for them cooperating," which is why there is a "gru[d]ge machine" on his head. Id.

He has been going to hospitals asking or help but has been told he is going crazy; he says he has never been crazy in his life. Id. He's tried to go to the common council, but was stopped from talking to them and put out of the building. Id. at 4-5. He received a complaint from the common council, and when he went to the Internal Affairs Division of the Milwaukee Police Department, they blocked his complaint. Id. at 5. He indicates that he was in so much pain at the police department that an officer called the Milwaukee County Behavioral Health Division crisis intervention service, which was "tearing [his] life down." Id. He says that the machine has caused so much damage to him and to his grandmother, and that it should not be in the community. Id.

For relief, the plaintiff wrote, "stop with your gru[d]ge machine and pay me for my pain and suffering. They are pushing some button that's making my brain freeze." Id. at 6.

     e.  August 29, 2017 Supplement (Dkt. No. 10)

Finally, the plaintiff filed a supplement on August 29, 2017. Dkt. No. 10. This supplement says that "Patrick Shannon & Samantha Biermann" from the Milwaukee Police department told him to do sexual favors for a place in the confidential informant program. Id. at 1. He says that they raped his cousin (the one who he called the police about) for a time cut, and that they forced the SSI program on the plaintiff. Id. The plaintiff says that these two individuals wanted the plaintiff to have sex with them. Id. The plaintiff concludes by saying:

13

> [I]m scared because they a whole movie they can stage a crime fake news talking though the t.v. my kids are at danger because I'm telling on the police department "please help" wont have no brain if they frame me with a case cheat in court way to much power!!! Never suppose to have sorry they just pushed the brain button can't think good right now but there more I guess thats the brain washing never suppose to be at no MCMH [Milwaukee County Mental Health] for what I did suppose to wen't to the county jail or a ticket they cheated by sending me there to start this bullshit.

Id. at 2.

### 2. *Analysis*

The plaintiff has alleged many things in the various documents he filed over the summer of 2017. The court can tell that he was suffering at that time, in pain and feeling like he had nowhere to turn for help. He feels that someone—James Wilkins, perhaps, or the F.B.I.—wanted him to become a confidential informant, but he refused. He believes that because he refused, many awful things have happened to him. There is a machine implanted in his head which causes him great pain, and creates voices, and makes it impossible for him to sleep. His family has suffered—perhaps by losing Community Care benefits or benefits from the Milwaukee County Department of Aging. He has been accused of having child pornography. He has been told that he is crazy, although he says that he never had any kind of mental health problems until this whole situation started. He wants this court to stop these harms.

The court knows that the plaintiff's pain and suffering are real. But the Constitution limits the relief that federal courts can provide. For a court to provide relief to someone, that person either must allege that the people he is suing violated the federal Constitution or federal laws, or he must sue a citizen

of a different state for money damages. 28 U.S.C. §§1331, 1332. Unless the plaintiff alleges these things, a federal court does not have the power or authority to grant him relief. As another federal judge has said in a different case, "[a]s real and distressing as plaintiff's allegations are to him, they are not matters that a court can resolve." Schottler v. Wisconsin, Case No. 10-cv-1330-slc, 2010 WL 11601059, at *1 (W.D. Wis. March 22, 2010).

The court must dismiss the plaintiff's case, because it does not have the authority to grant the relief he requests. But because the court is dismissing the case, the court will grant the plaintiff's motions to proceed without prepaying the filing fee.

## II. Conclusion

The court **GRANTS** the plaintiff's first motion to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's second motion to proceed without prepaying the filing fee. Dkt. No. 9.

The court **DISMISSES** the plaintiff's case without prejudice, because his complaints do not state claims for which this federal court can grant relief.

Dated in Milwaukee, Wisconsin this 30th day of July, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**